IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LUCKENBACH TEXAS, INC. | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:23-cv-547 |
| | § | |
| LUCKENBACH CATTLE COMPANY, LLC | § | |

**PLAINTIFF LUCKENBACH'S ORIGINAL COMPLAINT**

Plaintiff Luckenbach Texas, Inc. ("Luckenbach") files this Original Complaint against Defendant Luckenbach Cattle Company, LLC.

## I. INTRODUCTION

1. Despite repeated warnings, Defendant is misusing and profiting from the real Luckenbach's name and trademarks by marketing its competing business as "Luckenbach Cattle Company" and "Luckenbach Cattle Co." in advertisements, its own website, on its products, and to the media. Luckenbach brings this suit to protect the valuable trademark rights it owns as the holder of U.S. Trademark Registrations for the Luckenbach family of marks as well as common-law rights in the marks earned through longstanding use and promotion of its products and services in commerce.

2. In prior cases against other infringing parties, this Court has already concluded that Luckenbach's trademark is registered, is incontestable, is famous, and is legally protectable as a matter of law.

3. The *Luckenbach* mark is a highly regarded lifestyle brand that Plaintiff and its predecessors have cultivated for over 50 years. The real Luckenbach asks this Court to enjoin Defendant before it irreversibly damages its mark by confusing customers who are likely to mistakenly believe the Defendant's products are affiliated with the real Luckenbach.

## II. PARTIES

4. Plaintiff Luckenbach Texas, Inc. is a Texas corporation.

5. Defendant Luckenbach Cattle Company, LLC ("LCC") is a Texas limited liability company doing business in Gillespie County, Texas. LCC has used Plaintiff's trademarked name in its entity name itself "Luckenbach Cattle Company." LCC may be served with process through its registered agent, Petsch Sisters, LP, 1914 Ranch Road 1888, Fredericksburg, Texas 78624-4989.

## III. JURISDICTION AND VENUE

6. Venue is proper in this District because Defendant's principal place of business is in Gillespie County, and the misconduct took place and is taking place primarily in Gillespie County. The Court has jurisdiction over this dispute and jurisdiction to grant all relief Luckenbach requests. The amount in controversy is within the jurisdictional limits of the Court.

## VI. FACTUAL BACKGROUND

7. Defendant is misappropriating the real Luckenbach's name and marks, and Luckenbach's five decades of effort and expense to develop its highly regarded marks, fame, and sterling reputation. Defendant's actions are an unauthorized and brazen attempt to unlawfully capitalize on Luckenbach's registered marks and on its goodwill.

### A. Luckenbach's History and Fame

8. The real Luckenbach—Plaintiff's business—is a venue privately owned by Plaintiff that holds a rich and colorful commercial history.

9. Luckenbach began as a private property on which a family opened a small country store. The name *Luckenbach* was adopted in the mid-1800s when the family applied for a postal license.

They chose the name Luckenbach Post Office in honor of Carl Albert Luckenbach, the fiancé of the storeowner's sister. The Luckenbach Post Office was discontinued in the 1970s.

10. In the early 1970s, the family advertised the property for sale, including the saloon, dance hall, warehouse, and "egg route." Hondo Crouch, a Texas folklorist and humorist, purchased it along with others of Plaintiff's predecessors. The entirety of Luckenbach was then, and still is, on private property located in an unincorporated area of Fredericksburg, Texas, about 12 miles southeast of Fredericksburg's town square. From that time on, Luckenbach continued as a private entertainment venue:

> Hondo imagined it was an old west fairy-tale-like principality and gave everybody titles. He formed a make-believe town and proclaimed himself Mayor. He made Marge the Sheriff and appointed ambassadors to foreign countries. The trio began to use the nearly-abandoned buildings as a backdrop for anything that smacked of mirth and diversion: "Hug-Ins", a Luckenbach World's Fair, Ladies State Chili Bust, the Mud Dauber Festival—and daily sessions of song-picking, domino playing and beer drinking beneath the 500-year-old oak trees. Today, over thirty years later, these events are still celebrated, and the pickers are still pickin' out under the big oak trees.

Over the years, Luckenbach invested in its venue and goodwill to cultivate its famous brand. In 1973, Luckenbach hosted Jerry Jeff Walker, who recorded "Viva Terlingua," an event that helped usher in the era of Outlaw Country Music. "Viva Terlingua" and Waylon Jennings's song "Luckenbach Texas," released a few years later, helped to make Luckenbach famous nationwide. Then in 1995, Luckenbach hosted Willie Nelson for his renowned Fourth of July Picnic, drawing news media from all over the world. The picnic was so successful that Nelson continued to hold annual picnics at Luckenbach for five years. In 2009, Luckenbach entered the Guinness Book of World Records for having the largest number of guitar pickers at one spot. Of course, they played "Luckenbach Texas." Luckenbach recently sponsored a three-year exhibit at the Country Music Hall of Fame in Nashville honoring "Outlaw Country Music." Ex. A, *Website* (describing

Luckenbach's role in "chang[ing] Lone Star culture.") And for more than 25 years, Luckenbach has published a monthly newsletter promoting the Luckenbach culture, services, events, and products.

11. These efforts paid off, and the term *Luckenbach* has grown in prominence, becoming a well-known and beloved brand associated with Luckenbach's private entertainment venue and products. Luckenbach's property is a tourist destination, consisting of an events venue; a retail store; an RV park and a planned bed and breakfast; a dance hall; a saloon selling beer and wine; a restaurant; and an array of related products and services.

**B. Luckenbach's Marks and Trade Name**

12. Luckenbach's owners come from a longstanding legacy and tradition of ranching and raising livestock, and they currently manage a cattle operation, raising healthy cows and calves on the ranch that has been owned and operated by their family and its ancestors since 1879. Over five generations, Plaintiff's family has been recognized for its agricultural contributions within the Texas Hill Country through its work in ranching.

13. In 1978, Luckenbach filed for registration of the one-word service mark *Luckenbach*. Ex. B. The U.S. Patent and Trademark Office ("PTO") registered the mark for entertainment services in 1982. Ex. B. In later years, Luckenbach registered the motto "Everybody's Somebody in Luckenbach" and, 16 years ago, its signature Luckenbach® logos, one which contains only the one word: *Luckenbach*. *Id.* [1]

14. Luckenbach and its predecessors have been using the Luckenbach mark and trade name in commerce since 1971. *See id.* Ex. B. During these years, Luckenbach has carefully developed its

---

[1] The marks' history and background are summarized in Magistrate Judge Howell's Order in *Luckenbach Texas, Inc. v. Engel*, 1:19-cv-567, Doc. #51, 1–2, 8–10 (W.D. Tex. Dec. 6, 2021), *reconsidered on other grounds* at Doc. #69 (Mar. 16, 2022). The registered marks for Luckenbach® are referred to simply as *Luckenbach* throughout this pleading.

brand and reputation to make its venue a globally renowned tourism destination and country-music mecca. Due to Luckenbach's use and promotion, the marks have achieved widespread fame in Texas and throughout the United States as a brand indicative of a simpler, laid-back lifestyle, harkening back to a nostalgic country atmosphere. *Id.* Ex. C (describing the significance of Luckenbach as "A Texas state of mind, where you can kick back, relax and get away from the hustle and bustle of everyday life—like a step back in time."). Luckenbach draws guests who arrive to listen to country music and share a drink with friends; and it has hosted countless festivals, concerts, special events, weddings, and even a beauty contest. In 2020, Luckenbach competed with venues all over America for the title of best music venue at the Ameripolitan Music Awards in Memphis, Tennessee—and it won.

15. Luckenbach's onsite operations include serving food and drinks to its guests. And, as part of this revered brand, Luckenbach has long operated a retail business in its physical General Store and online, where it sells other Luckenbach products, including signature condiments, kitchen goods, artwork, household wares, customized western goods and clothing—all bearing one of its registered marks. In 2018, leveraging its lifestyle brand, Luckenbach formed a subsidiary, granted it a license, and opened another business, "Luckenbach on Main, LLC," about ten miles away from its venue. Luckenbach on Main, also operating as Luckenbach Outpost, offers retail sales of Luckenbach's branded products and serves beer and wine.

16. Luckenbach also expects to be granted a trademark registration for use of the mark on *Luckenbach*-licensed whiskey, and the registration will be effective as of its 2018 filing date with the PTO once it is granted. *See* 15 U.S.C. § 1057(c). All third-party petitions opposing Luckenbach's whiskey-related applications have been dismissed, and Luckenbach has entered into a licensing agreement with a distilling company for the *Luckenbach* branded whiskey.

17. This Court has rendered a series of recent rulings upholding the validity of Luckenbach's marks. In 2021, in a consent-jurisdiction case, the Honorable Dustin Howell ruled that the Luckenbach mark is incontestable and that it is "conclusively owned by Plaintiff and is legally protectable as a matter of law." *Luckenbach Texas, Inc. v. Engel*, No. 1:19-cv-567 (Dec. 6, 2021), Doc. #69 at 5–6. That portion of the summary-judgment order for Plaintiff stands. *Id.* Then the jury in that case rendered a verdict in Luckenbach's favor on infringement and dilution, including a finding that Luckenbach's trademark is famous throughout Texas. *Id.* at Doc. #155 at 1. After the verdict for Plaintiff and against the lodging business that was infringing the mark, the Court rendered a permanent injunction and final judgment protecting the Luckenbach mark. *Id.* at Doc. #155; Doc. # 156.

18. This Court ruled in Plaintiff's favor in a separate suit—also involving the Luckenbach marks—against an infringing liquor, restaurant, hotel, and retail business. *Luckenbach Texas, Inc. v. Skloss*, No. 1:21-cv-871 (Apr. 18, 2023). Following the Court's denial of Defendant's motion to dismiss Plaintiff's infringement, dilution, and cyberpiracy claims, the parties reached an agreed permanent injunction, and the Court rendered agreed findings and conclusions of law for Plaintiff on those claims. *See id.* at Doc. # 78, 134. The Court expressly held "that the Luckenbach mark is incontestable and legally protectable as a matter of law" and "that Plaintiffs Luckenbach mark is famous throughout Texas and throughout Gillespie County[.]" *Id.* at Doc. # 134 at 1–2.

19. In both the *Engel* and *Skloss* cases, the Court restrained the defendants from using *Luckenbach* as marks for their respective businesses and ordered any products using those marks to be revised or destroyed. No. 1:19-cv-567 at Doc. # 155 at 2–3; No. 1:21-cv-871 at Doc. # 134 at 2.

**C. Defendant's Misconduct**

20. In November 2021, Plaintiff Luckenbach learned that Defendant had started a cattle business, selling and advertising meat products under the mark "Luckenbach Cattle Company." Defendant chose a name and logo that featured Luckenbach as the first and only identifier for its cattle company:




21. Defendant has no trademark registration, nor even a pending application, for the term *Luckenbach*. Defendant could not obtain a registration to the mark because Plaintiff already owns it, and Defendant has no claim to the term. Defendant boasts that its company sells "Local Fredericksburg Beef" from its family ranch, entitled "Petsch Ranch," which it describes as property owned over several generations by the Petsch Family. Ex. D, *Website.* Defendant describes a legacy of ranching passed down from the owners' ancestors, "some of the greatest pioneers of Fredericksburg, Texas." The property, as Defendant describes it, lies outside of both Luckenbach and Fredericksburg. *Id.*

22. Defendant has recently begun marketing its beef product by capitalizing on the lifestyle branding Plaintiff Luckenbach has developed over 50 years. Defendants began posting videos featuring country music, food, and adult beverages; with families sharing outdoor spaces in the Texas hill country terrain while wearing laid-back attire and cowboy hats; all while boasting a generational legacy of "blazing a trail" in the area. *E.g. Luckenbach Cattle Company Instagram*

*Page,* https://www.instagram.com/luckenbachcattleco/ (last accessed May 16, 2023). Plaintiff later learned that Defendant had also registered the domain names **luckenbachcattleco.com** on October 4, 2020, and **luckenbachcattlecompany.com** on January 5, 2021 ("Unauthorized Domain Names"), putting them to use to launch websites advertising the infringing beef products.

23. Upon first learning of Defendant's use of Luckenbach's mark, Plaintiff wrote to Defendant in November 2021. By both email and later by formal letter, Luckenbach requested and then demanded that Defendant cease using *Luckenbach*, explaining that Plaintiff owns the federally registered trademarks for *Luckenbach*, and that Defendant's use would be likely to cause dilution or confusion as to the marks. Although Luckenbach gave Defendant months to comply with trademark law and change its name to avoid infringing Plaintiff's trademark rights and/or negotiate an agreement to obtain legal licensing rights to a limited use of the mark, Defendant refused.

24. Defendant has long known of Luckenbach's famous marks and its owners' longstanding ranching and cattle operations. Defendant is trading on Luckenbach's name and goodwill by making customers believe, incorrectly, that Defendant's cattle, retail store, food products, and livestock business come from, or are affiliated with, the real Luckenbach.

25. Defendant's campaign to profit from Luckenbach's mark is intentional, bad-faith misconduct. Luckenbach respectfully requests injunctive and declaratory relief, money damages and attorneys' fees.

## VII. CAUSES OF ACTION

### A. Dilution

26. Defendant's misappropriation of Luckenbach's famous and distinctive name and marks is causing and is likely to cause dilution by blurring and/or by tarnishment in violation of TEX. BUS. COMM. CODE § 16.103. Defendant's acts began after Luckenbach's marks became famous in Texas

and are causing an association arising from the similarity between Defendant's mark/trade name and Plaintiff's famous marks that impairs the distinctiveness of Luckenbach's famous marks and harms the reputation of Luckenbach's famous marks.

27. Defendant's dilution is willful. Defendant intends to trade on the recognition of Luckenbach's famous marks, which causes dilution and harm to the reputation of Luckenbach's famous marks. Defendant is acting with knowledge of Plaintiff's marks and in bad faith and willfully intended to cause the dilution of Plaintiff's famous Luckenbach mark.

28. For decades, Luckenbach's mark has been widely recognized by the public throughout the United States and Texas as a designation of source of Plaintiff's goods or services. *Luckenbach* is a household name, and the respective findings and judgments in *Luckenbach Texas, Inc. v. Engel*, 1:19-cv-567 and *Luckenbach Texas, Inc. v. Skloss*, 1:21-cv-871 resolve that *Luckenbach* is famous, at a minimum, in Gillespie County and throughout Texas. Luckenbach and its marks have received widespread publicity that reaches counties and cities throughout the country and throughout Texas. Luckenbach appears in travel magazines and internet sites with nationwide and statewide readership and it attracts visitors from across the state, the nation, and even worldwide. Luckenbach advertises its mark and commercial offerings nationwide and statewide and sells its products extensively, through its online store and in person, to Texas residents and out-of-state customers. The general public of Texas, and well beyond Texas, regularly engages with Luckenbach's mark through visits to Luckenbach's entertainment venue and through visits to its website.

29. Defendant's acts are causing Luckenbach irreparable damage because the rights in the marks are unique and valuable property rights, with a market value that is incalculable and that, once damaged in the marketplace by Defendant's wrongful use, is impossible to fully repair.

30. Defendant should be enjoined from further acts of dilution and ordered to deliver for destruction all articles that are in violation of Plaintiff Luckenbach's rights; and held liable for disgorgement of its profits, Luckenbach's damages, the costs of this action, attorneys' fees, and nominal, statutory treble damages and profits, and exemplary damages.

**B. Registered Trademark Infringement**

31. Defendant has infringed Luckenbach's registered trademarks contained in Exhibit B in violation of 15 U.S.C. §§ 1114, 1125(a).

32. Plaintiff has federal registrations for the Luckenbach marks, which have become incontestable. *See* 15 U.S.C. § 1065. Those registrations constitute conclusive evidence of the validity of the marks, of the validity of the registrations, of Plaintiff's ownership of the marks, and of Plaintiff's exclusive right to use the marks on or in connection with the products and services specified in the registrations. *See* 15 U.S.C. §§ 1057, 1115(b). This Court has ruled that Plaintiff owns these marks, and that the marks are valid, legally protectable, and incontestable. *Luckenbach Texas, Inc. v. Engel*, 1:19-cv-567 and *Luckenbach Texas, Inc. v. Skloss*, 1:21-cv-871.

33. Plaintiff's use and promotion of the Luckenbach marks and name on or in connection with its products and services has been widespread throughout Texas and the United States, and the marks are inherently distinctive or, in the alternative, have acquired secondary meaning as valuable trademarks. As a result, Plaintiff has both statutory and common-law rights and goodwill in the Luckenbach marks and trade name.

34. Plaintiff has been using the Luckenbach marks in commerce as an identifier of source of Luckenbach's products and services since long before Defendant started using its *Luckenbach Cattle Company* name. The primary element of Defendant's mark—*Luckenbach*—is not just similar, but identical to, Plaintiff's mark, the use of which is likely to deceive, cause confusion, or

cause mistake among consumers as to the source or origin of the parties' respective goods or services, which are sufficiently related that consumers are likely to believe they come from the same source, or are sponsored by or affiliated with the same source. The likelihood of confusion is increased because Defendant's business is in close proximity to the real Luckenbach's business, and because Luckenbach's operations, like Defendant's infringing operations, includes retail and food operations. Further, Luckenbach's owners come from a legacy of ranching and have long engaged in cattle operations. The livestock and meat business is within Luckenbach's zone of expansion.

35. Luckenbach has not, and does not, authorize or consent to Defendant's use, and Luckenbach has no control over the nature or quality of goods and services Defendant offers, so the confusion Defendant creates causes Luckenbach irreparable harm.

36. Defendant has long known that Plaintiff does not consent to Defendant's use of the *Luckenbach* marks, having received notice of Plaintiff's demands to cease use in the infancy of its operation. Defendant is acting in bad faith, with actual knowledge of the marks, deliberate, willful, and with malice or gross negligence.

37. Consequently, Defendant should be enjoined and ordered to deliver for destruction all articles that are in violation of Plaintiff Luckenbach's rights; and held liable for disgorgement of its profits, Luckenbach's damages, the costs of this action, attorneys' fees, nominal damages, statutory treble damages, and exemplary damages.

**C. Unfair Competition**

38. Defendant's willful, misleading use of Luckenbach's name, marks and lifestyle brand in commerce in connection with Defendant's ranch and beef retail business is likely to cause (and/or further cause) confusion or mistake and is likely to deceive the public into thinking Defendant is

affiliated, connected to or associated with Plaintiff Luckenbach, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities, in violation of 15 U.S.C. § 1125(a) and state common law.

39. Defendant's use, marketing, and advertising of Plaintiff's mark have cultivated the appearance that Luckenbach Cattle Company is affiliated with Luckenbach, which is a false association, is misleading, and is a false designation of origin. Defendant's misconduct constitutes unfair competition, including palming off and misappropriation, that is causing or is likely to cause confusion to consumers. It is calculated to deceive and cause the public to trade with Defendant when it intended to and would otherwise have traded with the real Luckenbach.

40. Defendant's conduct is causing Luckenbach irreparable damage to its goodwill, reputation, revenue, business relationships and business. Defendant is being unjustly enriched by obtaining profits through unfair competition and by retaining benefits that rightfully belong to Luckenbach.

41. Defendant should therefore be enjoined from further acts in violation of the statute and common law, ordered to deliver up for destruction all articles that are in violation of Plaintiff Luckenbach's rights, and held liable for disgorging its profits, Luckenbach's damages, the costs of this action, attorneys' fees (as this is an exceptional case) and nominal and exemplary damages.

**D. Cyberpiracy**

42. Defendant is committing cyberpiracy in violation of 15 U.S.C. § 1125(d). Defendant has registered, trafficked in, and/or used one or more Unauthorized Domain Names that (i) are identical or confusingly similar to the Plaintiff's Luckenbach mark, which was distinctive at the time of Defendant's registration of the Unauthorized Domain Name; and/or (ii) are identical or confusingly similar to or dilutive of the Plaintiff's Luckenbach mark, which was famous at the time of Defendant's registration of the Unauthorized Domain Names.

43. Defendant has a bad faith intent to profit from Plaintiff Luckenbach's marks. Defendant, despite possessing no intellectual-property rights in the marks, no prior use of the mark, and despite not ever having been identified or known by the name "Luckenbach," registered the Unauthorized Domain Names containing the Luckenbach mark. Defendant is commercially using the mark, despite Luckenbach's known rights in the mark that long preceded Defendant's decision to use the mark in its domain names to launch a new business. Defendant intends to divert consumers from the Plaintiff's online location to a site accessible under one or more of the Unauthorized Domain Names that could harm the goodwill represented by the Plaintiff's Luckenbach mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of its unauthorized websites. Additionally, Defendant knew at the time it registered the Unauthorized Domain Names that they were identical or confusingly similar to the Plaintiff Luckenbach's marks, which were distinctive at the time of the Defendant's registration of those domain names, or dilutive of Plaintiff's famous Luckenbach marks, which were famous at the time of the Defendant's registration of the domain names. Defendant's use of the name is likely to impact Luckenbach's business by diverting consumer traffic, preventing internet users from reaching Luckenbach's own website. The Plaintiff's mark *Luckenbach*, which Defendant incorporated in the Unauthorized Domain Names' registration, is distinctive and famous within the meaning of 15 U.S.C. § 1125(c).

44. Consequently, Defendant should be enjoined from further acts of cyberpiracy with respect to the Luckenbach's marks, and the Court should order the forfeiture or cancellation of the Unauthorized Domain Names or their transfer to the real Luckenbach.

**E. Common Law Trademark Infringement**

45. Defendant has willfully infringed Luckenbach's common law rights in the Luckenbach name and marks. Luckenbach's marks are inherently distinctive or have achieved secondary meaning, and Plaintiff has been using the Luckenbach name and marks in Texas since long before Defendant started using "Luckenbach Cattle Company." Defendant's livestock, retail, and food business is in close proximity to Plaintiff's venue, and Defendant has been well aware of Luckenbach's prior rights in the Luckenbach marks while using the Luckenbach name and mark for its retail, food, and livestock business. Defendant's use of *Luckenbach Cattle Company* is likely to deceive, cause confusion, or cause mistake among consumers as to the source or origin of the parties' respective goods or services, which are sufficiently related that consumers are likely to believe they come from the same source or are sponsored by or affiliated with the same source.

46. Luckenbach has not authorized or consented to Defendant's use of *Luckenbach Cattle Company*, and Luckenbach has no control over the nature or quality of goods and services Defendant offers, so the confusion Defendant creates causes Luckenbach irreparable harm.

47. Consequently, Defendant should be enjoined from further acts of infringement, ordered to deliver for destruction all articles that are in violation of Plaintiff Luckenbach's rights, and held liable for disgorging its profits, Luckenbach's damages, the costs of this action, attorneys' fees and exemplary damages.

**F. Unjust Enrichment**

48. Defendant has been unjustly enriched by its use of the *Luckenbach* mark, infringement, and dilution. It has obtained benefits from Plaintiff by taking of an undue advantage and has wrongfully secured a benefit or passively received one which it would be unconscionable to retain.

49. Because of Defendant's unjust enrichment, Plaintiff is entitled to all profits and other benefits Defendant received from its wrongful conduct.

## IX. JURY TRIAL

50. Luckenbach demands a trial by jury on all issues triable to a jury.

## X. PERMANENT INJUNCTION

51. Plaintiff will suffer irreparable injury in the absence of a permanent injunction, and remedies at law are inadequate to compensate the Plaintiff for the injury. The harm to Plaintiff in the absence of injunctive relief outweighs any potential harm to Defendant should an injunction issue.

52. An injunction will serve the public interest because it will prevent further likelihood of confusion and likelihood of dilution from occurring as a result of Defendant's actions.

53. Plaintiff Luckenbach seeks a permanent injunction against Defendant, and anyone acting in concert or participation with Defendant, containing restraints protecting its trademarks. Luckenbach asks that the injunction's restraints include, but are not limited to, the following:

a. ordering Defendant to cease any and all use or inclusion of *Luckenbach*, or any variation of *Luckenbach*, as all or part of any name, mark, label, logo, title, or identifying term for or within Defendant's business;

b. prohibiting Defendant's use of *Luckenbach Cattle Company* in any commercial manner, whether on or in a food product, livestock, real property, webpage, URL, meta data, social-media username or handle, product, service, advertisement, promotion, signage, venue, lodging, internet listing, offer for sale, other article, or in advertising, marketing, or promotion, in the use of any domain names, or otherwise;

c. ordering Defendant to destroy all products, published materials, signage, or labels containing *Luckenbach*; transfer to Plaintiff all web domains or online accounts containing *Luckenbach;* remove or disable all tags, metadata, references, or labels related to Defendant's websites or online accounts that contain or use *Luckenbach*; and permanently remove from commerce, publication, or any public access any similar items under Defendant's ownership or control that contain *Luckenbach* or any variation thereof; and

d. enjoining Defendant from assisting or engaging any third party to do any of the restrained activities.

**PRAYER**

Plaintiff Luckenbach Texas, Inc. respectfully requests permanent injunctive relief as described above and for a declaration that Plaintiff Luckenbach owns the exclusive right to use and register the mark *Luckenbach* for any livestock, cattle, ranching, meat, retail, or other food-related business. Finally, Plaintiff Luckenbach seeks disgorgement of Defendant's profits as well as compensatory damages, statutory damages, the costs of this action, nominal damages, attorneys' fees and exemplary damages, and such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

Karen C. Burgess
State Bar No. 00796276
Email: kburgess@burgesslawpc.com
Stacy Rogers Sharp
State Bar No. 240152109
Email: ssharp@burgesslawpc.com
Katie Dolan-Galaviz
State Bar No. 24069620
Email: kgalaviz@burgesslawpc.com
**BURGESS LAW PC**
404 West 13th Street
Austin, Texas 78701-1825
Telephone: (512) 482-8808
Facsimile: (512) 900-6325

Dated: May 16, 2023

By: *<u>/s/ Karen C. Burgess</u>*
Karen C. Burgess

**ATTORNEYS FOR PLAINTIFF LUCKENBACH TEXAS, INC.**